AUSA Marcia S. Cohen
AUSA Ioannis D. Drivas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 26 mj 1690<br>SEALED COMPLAINT |
| -v- | Violation of 18 U.S.C. §§ 2251(a) and (e) and 2423(a) |
| ANDREW FORD,<br>Defendant. | COUNTY OF OFFENSE: Westchester |

SOUTHERN DISTRICT OF NEW YORK, ss.:

VANCE PLESKO, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation ("FBI") and charges as follows:

COUNT ONE
(Sexual Exploitation of a Child)

1. In or about December 2024, in the Southern District of New York and elsewhere, ANDREW FORD, the defendant, employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct, for the purpose of producing a visual depiction of such conduct, and for the purpose of transmitting a live visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and the visual depiction was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and the visual depiction was actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, to wit, FORD, while in Greenwich, Connecticut, engaged in sexual activity with a 13-year-old minor, photographed the sexual activity using a cellphone, and then transported the depiction from Connecticut to Westchester County, New York.

(Title 18, United States Code, Sections 2251(a) and (e))

COUNT TWO

(Transportation of a Minor for Unlawful Sexual Activity)

2. In or about December 2024, in the Southern District of New York and elsewhere, ANDREW FORD, the defendant, knowingly transported an individual who had not attained the age of 18 years in interstate and foreign commerce with the intent that the individual engage in sexual activity for which any person can be charged with a criminal offense, to wit, FORD

transported Victim-1 from Westchester County, New York to Fairfield County, Connecticut and, while in Connecticut, engaged in illegal sexual activity with Victim-1 in violation of Connecticut criminal law, including CT Gen Stat § 53a-71.

(Title 18, United States Code, Section 2423(a).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a detective with the Ramapo Police Department ("RPD") and an FBI Task Force Officer assigned to the Westchester County Safe Streets Task Force. I have been employed as a law enforcement officer with RPD for approximately 21 years. I have been a detective and an FBI Task Force Officer for approximately the last six years. I have participated in numerous investigations, including investigations involving violent crimes, narcotics, frauds, firearms, and crimes against children. I have gained expertise in these areas through training and daily work related to conducting and participating in these types of investigations.

4. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Beginning in or about April 2026, the United States Attorney's Office for the Southern District of New York and the FBI became involved in an investigation involving the sexual exploitation of a then-13-year-old child ("Victim-1") by ANDREW FORD, the defendant, an approximately 42-year-old male. Based on my conversations with a Detective ("Detective-1") at the Port Chester Police Department ("PCPD") and my review of PCPD files, I am aware that, on or about December 29, 2024, Victim-1's parents reported to PCPD that FORD had engaged in sexual activity with Victim-1. Victim-1's parents provided PCPD with Victim-1's phone ("Phone-1") and authorized law enforcement to conduct a search of Phone-1.

6. Based on my conversations with Detective-1 and my review of PCPD reports, I am aware that Detective-1 met with Victim-1's father on or about December 29, 2024 and on a number of occasions thereafter. Among other things, Victim-1's father advised Detective-1, in substance and in part, that:

a. On or about December 28, 2024, ANDREW FORD, the defendant, who was known to Victim-1 and her parents and who went by the nickname "AJ," visited their home in Westchester County, New York.

b. Victim-1's father observed FORD and Victim-1 seated on a couch and observed that they appeared startled when he entered the room in which they were sitting.

c. On or about December 29, 2024, Victim-1's father checked his phone bill and saw multiple calls and text messages between Victim-1 and the number he knew to be FORD's cellphone number, a telephone number ending in 1787 ("1787-Number").

7. Based on my conversations with Detective-1 and my review of PCPD reports, I am aware that Detective-1 met with Victim-1's mother on or about December 29, 2024 and on a number of occasions thereafter. Among other things, Victim-1's mother advised Detective-1, in substance and in part, that:

a. On or about December 29, 2024, Victim-1's mother reviewed text messages between Victim-1 and the 1787-Number. She observed that the 1787-Number was listed in Victim-1's contacts as "AJ."

b. Victim-1's mother saw numerous messages between Victim-1 and the 1787-Number that appeared to her to be sexually suggestive, including messages in which the 1787-Number referred to Victim-1 as a "whore."

c. After reviewing the messages, Victim-1's mother asked Victim-1 about them. Victim-1 told her that FORD, the defendant, had been touching her underneath her clothes and that she had "sucked his penis."

8. On or about December 31, 2024, Victim-1 was interviewed by a forensic interviewer. The interview was video recorded and I have watched the recording. In addition, based on my conversations with Detective-1, I am aware that Detective-1 met with Victim-1 on or about December 29, 2024 and on a number of occasions thereafter, including a meeting on or about March 24, 2025. Based on my review of the recorded interview with Victim-1 and my conversations with Detective-1, I am aware that, among other things, Victim-1 advised, in substance and in part, that:

a. She engaged in multiple sexual encounters with ANDREW FORD, the defendant, who she called "AJ," in or about December 2024. These encounters occurred at her home in Westchester County, New York and, on one occasion, in FORD's car. Among other things, during these encounters, FORD touched her breasts, put his fingers into her vagina, and directed her to use her mouth on FORD's penis.

b. Victim-1 and FORD engaged in text communications as well as phone calls. For these communications, Victim-1 used her cellphone. On at least one occasion, Victim-1 sent FORD a photo of her breasts at his request. On numerous occasions, FORD directed her to delete the texts from her phone. FORD told her not to tell her parents because, if she did, he could get into trouble.

c. In or about December 2024, FORD picked her up at her home in Westchester County, New York. She told her father that FORD was taking her to get candy. While she was with FORD, he parked under a bridge and directed her to get on her knees on the car seat and then turn over so that she was hovering over his legs. He unzipped his pants, took his penis out, and told her to suck it. While she was engaging in this activity, his hands were on her breasts and also touching her hair and buttocks. He had his phone out and he said that he might take a

video. He told her that if he took a video, he would delete it. While Victim-1 was with FORD, they also went to a store at which they bought candy, and then FORD brought her back to her home in Westchester.

9. Based on my conversations with Detective-1, I am aware that, on or about April 10, 2026, Victim-1 showed Detective-1 where the encounter in FORD's car occurred and identified the area under the Connecticut Turnpike overpass in the Byram section of Greenwich, Connecticut.

10. Based on my conversations with Detective-1 and my review of law enforcement records, I understand that, on or about January 15, 2025, the High Technology Crime Unit of the Westchester County District Attorney's Office extracted the material on Phone-1. Among other things, the material extracted from Phone-1 included text communications between Phone-1 and the 1787-Phone, which is identified in Phone-1's contacts as "AJ." On or about April 17, 2026, the Westchester County District Attorney's Office provided federal law enforcement with the extraction of text messages between Phone-1 and the 1787-Phone, and I have reviewed them. Based on my review of those text messages, I am aware that, between approximately February 24, 2024 and January 13, 2025, there were hundreds of text messages between Phone-1 and the 1787 Number. I am also aware that these communications include the following, in substance and in part:

a. On or about April 14, 2024, AJ texted: "U stay away from boys missy; Tell them your taken already :)";

b. On or about December 14, 2024, Phone-1 transmitted a photo of a female's face and breasts to AJ. Based on my review of the recording of the interview of Victim-1, I recognize Victim-1 as the female in the photo.

c. On or about December 28, 2024 at approximately 2:51 p.m., AJ said, "We can be the same as we were in the beginning." Phone-1 responded "Kk." AJ said "Don't have to be anything I thought about that and I am not forcing that on you." Phone-1 asked "Forcing what on me." AJ said, "Laying with me and all that."

d. On or about December 28, 2024 at approximately 3:15 p.m., AJ said "So like I said, I'm gonna be with other girls so that 1on1 thing is lost not But with you as well then." Phone-1 asked "it would be me and her right," and AJ responded "And possibly others as well" and "I was controlling myself to be good to you."

e. On or about December 28, 2024 at approximately 3:41 p.m., AJ said, "Yea I meant what I said. When I want those other things it's happening[;] The back and front. That's that." After a few additional messages, AJ asked "Will I be the 1st? Prob not," to which Phone-1 responded "Yeah You will." In subsequent messages, AJ said, "I don't want that to be a force thing like that" and "If you end up wanting me to be that one then ok I accept." AJ also said, "It's about wanting that because you will remember that person forever."

f. On or about December 28, 2024 at approximately 3:49 p.m., AJ said he was "going to do that ass thing then. Because that you dont have to chose me. I want it so I'm taking it But hey, atleast ill be the first on everything else except the most important [] [t]hing. . . And tell me when your ready to do the main thing if I'm still hanging with you. Tell me." Phone-1

responded, "But like where would we do that???" AJ continued, "Because I'll be honest, I would want to be that one:-)" and "See that's the thing you lost." AJ added, "you BLEW that like you blew me" and "But I will make it happen. You don't have to worry about the where. I can take care of all that."

g. On or about December 28, 2024 at approximately 3:55 p.m., AJ said, "It will come. After we get closer like we were but it will change and we will become alot closer I'm gonna laugh when those feelings you don't have now for me start to form." He also said, "I'm gonna rub it in sooo hard your gonna actually be sad and cry lol I know that's aweful to say but it's true. You will finally know how I felt to be nothing to the person you care about . . . I know it's bad for wanting those things but I'm honest. And one night you will be laying on me or I'll be kissing your neck and my phone will ring and I'll say I have to go[;] And you will know. And that chest pain, that real feeling for someone will hit. You will know how I used to feel."

h. On or about December 28, 2024 at approximately 4:05 p.m., AJ said "you will have plenty of time not being a whore to do it[.] You can get all that time and send it this way. And the whore feelings when u feel them you can send them to me too."

i. On or about December 28, 2024 at approximately 4:20 p.m, AJ said, "Forget special. I'm going to f you like the W you are" and "Sucks that either way you're going to love it. Which normally would have made me happy but not with you. Ok I gotta stop before I go there. Then back home to wash up after. See u thrn"

j. On or about December 28, 2024 at approximately 4:41 p.m. AJ said, "I'm gonna chill my with chick then I'm coming there." After Phone-1 responded "Alright," AJ stated that she should "[i]nvite me in to listen to music with you. That will buy some time" and that, after that, "we can continue in the normal couch, hallway, bathroom blah blah blah."

11. Based on my conversations with Detective-1 and my review of PCPD reports, I am aware that, on or about May 12, 2025, ANDREW FORD, the defendant, was arrested by PCPD detectives, while FORD was driving a vehicle ("Vehicle-1") in Westchester County. Following his arrest, PCPD detectives seized a phone ("Phone-2") that FORD had on his person. They also impounded Vehicle-1 and conducted an inventory search of it. That inventory search resulted in the seizure of an additional phone ("Phone-3").

12. Based on my conversations with Detective-1, I am aware that, following his arrest, Detective-1 interviewed ANDREW FORD, the defendant. The interview was recorded and I have watched the recording. Based on my review of the recording, I am aware that, FORD told Detective-1 the following, in substance and in part:

a. The 1797-Number is his phone number. He provided another phone number ending in 9160 (the "9160-Number") and identified that number as his work phone.

b. He knows Victim-1 but never had any sexual contact with her.

c. He engaged in text communications with Victim-1 over a period of months, but these messages were not sexual. To the extent there appear to be sexual messages, his number must have been "spoofed."

d. `He has never been alone with Victim-1, except on one occasion when he took her to a store to buy candy. On that occasion, Victim-1's mother called him while he and Victim-1 were in the car. He stopped the car in Byram, Connecticut to speak to Victim-1's mother and told her that they were on their way back.

13. Based on my review of T-Mobile records, I am aware that the subscriber of the 1797-Number is an individual who I know, based on this investigation, to be the father of ANDREW FORD, the defendant.

14. Based on my review of law enforcement records, I understand that, on or about May 12, 2025, ANDREW FORD, the defendant, was charged in the Justice Court of the Town of Rye, New York with two counts of rape in the second degree, in violation of New York Penal Law § 130.30. On or about May 13, 2025, FORD was arraigned in the Town of Rye Court and released on bail.

15. Based on my conversations with Detective-1 and my review of law enforcement records, I am aware that, on or about July 8, 2025, PCPD obtained a search warrant authorizing the search of Phone-2 and Phone-3 for, among other things, evidence relating to the sexual abuse of Victim-1 by ANDREW FORD, the defendant. On or about April 24, 2026, the Honorable Andrew E. Krause, United States Magistrate Judge, Southern District of New York, authorized a search of Phone-2 and Phone-3 for, among other things, evidence of violations of Title 18, United States Code, 2251(a) (sexual exploitation), 2422(b) (coercion and enticement), and 2423(a) (transportation of minors).

16. I am in the process of reviewing the material extracted from Phone-3, which, as set forth above, was obtained from Vehicle-1 following the arrest of ANDREW FORD, the defendant. Based on my review, I am aware that the telephone number assigned to Phone-3 is the 9160-Number. The material extracted from Phone-3 includes approximately nine photos of Victim-1 in which she appears to be in a vehicle ("Vehicle Photos"). Several of the photos show Victim-1 using her mouth on a male's penis. It is clear from the Vehicle Photos that Victim-1 is on her knees in the passenger seat of the car with her upper body leaning over the male and her mouth at his penis. A number of the photos are close-ups of the sexual activity and the entire photo depicts Victim-1's mouth on the penis. In one of the Vehicle Photos, a portion of a right hand appears to be touching Victim-1's ear near the nape of her neck. A thumb is visible, as is the area from the thumb to the first knuckle of an index finger, where the finger meets the palm of the hand. The hand appears to belong to a male, based on the size of the hand and appearance of the skin. Another photo in the Vehicle Photos shows the tips of four fingers cupping Victim-1's left breast.

17. Based on my review of the material extracted from Phone-3, I am aware that Phone-3 also contains approximately three photos that show Victim-1's face and her exposed breasts.

WHEREFORE, the deponent respectfully requests that ANDREW FORD, the defendant, be arrested and imprisoned or bailed, as the case may be.

/s/ Vance Plesko by JCM w/ permission
Vance Plesko
Task Force Officer
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
5th day of May, 2026.

Judith C. McCarthy
THE HONORABLE JUDITH C. McCARTHY
Chief United States Magistrate Judge
Southern District of New York